Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Todd M. Swensen
Assistant United States Attorney
402 E. Yakima Ave., Ste. 210
Yakima, WA 98901
Telephone: (509) 454-4425

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 1 4 2023

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL LAWRENCE SYLVESTER,<br><br>Defendant. | Case No.: 1:22-CR-02007-MKD<br><br>PLEA AGREEMENT |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Todd M. Swensen, Assistant United States Attorney for the Eastern District of Washington, and Defendant PAUL LAWRENCE SYLVESTER ("Defendant"), both individually and by and through Defendant's counsel, Robert Flennaugh, agree to the following Plea Agreement:

1.   Guilty Plea and Maximum Statutory Penalties:

Defendant agrees to enter a plea of guilty to the Indictment filed on January 11, 2022, which charges Defendant with Possession with Intent to Distribute a Mixture or Substance Containing a Detectable Amount of MDMA, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), a Class C felony.

//

PLEA AGREEMENT - 1

Defendant understands that the following potential penalties apply:

    a. A term of imprisonment of up to 20 years;

    b. A term of supervised release of not less than 3 years and up to a lifetime;

    c. A fine of up to $1,000,000;

    d. Denial of certain federal benefits pursuant to 21 U.S.C. §§ 862 and 862a; and

    e. A $100 special penalty assessment.

2. <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

    a. Five (5) years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b. Three (3) years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c. Two (2) years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

//
//

PLEA AGREEMENT - 2

3. <u>The Court is Not a Party to this Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a. Sentencing is a matter solely within the discretion of the Court;

    b. The Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c. The Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d. The Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e. The Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f. The Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>:

If Defendant is not a citizen of the United States, Defendant understands the following:

    a. Pleading guilty in this case may have immigration consequences;

    b. A broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

PLEA AGREEMENT - 3

      c.    Removal from the United States and other immigration consequences are the subject of separate proceedings; and

      d.    No one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that he is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    <u>Denial of Federal Benefits</u>:

Defendant understands that by entering this plea of guilty, Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

6.    <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

      a.    The right to a jury trial;

      b.    The right to see, hear and question the witnesses;

      c.    The right to remain silent at trial;

      d.    The right to testify at trial; and

      e.    The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7. **Elements of the Offense:**

The United States and Defendant agree that in order to convict Defendant of Possession with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of MDMA, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), the United States would have to prove the following beyond a reasonable doubt:

    a. *First*, on or about March 16, 2021, within the Eastern District of Washington, Defendant knowingly possessed MDMA; and

    b. *Second*, Defendant possessed the MDMA with the intent to distribute it to another person.

8. **Factual Basis and Statement of Facts:**

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; and the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

//

PLEA AGREEMENT - 5

On or about March 5, 2021, the United States Border Patrol (USPB) intercepted an international package at the International Mail Facility in Torrance, California, originating from Belgium destined for an individual by the name of Nicholas Farrell in Yakima, Washington, at the United Parcel Serve (UPS) store at 420 South 72nd Avenue, Unit 180, #144. Border Patrol agents opened the package and found approximately one (1) kilogram of 3,4-methylenedioxy-methamphetamine[1] (hereafter "MDMA") and approximately 100 grams of ketamine[2] contained within a yellow plastic Lego container. MDMA is a Schedule I drug under the Controlled Substances Act. Ketamine is a Schedule III drug under the Controlled Substances Act. Both substances tested positive using a Gemini Chemical Identification Analyzer.

Because the package was destined for Yakima, Washington, USPB forwarded the package and the case to Department of Homeland Security Investigations (HSI)-Yakima. Federal agents subsequently served a subpoena on the UPS store manager to obtain the rental contract for UPS box #144, which included a copy of a driver's license for Nicholas Farrell.

On or about March 15, 2021, HSI-Yakima took possession of the package and secured it in the HSI-Yakima evidence room. On March 16, 2021, HSI-Yakima special agents delivered the package to package to the UPS store and instructed UPS personnel to scan the package, which automatically triggered a notification to Nicholas Farrell that the package was ready for pickup. Meanwhile, HSI-Yakima, Yakima Police Department (YPD), and Drug Enforcement Administration (DEA) personnel set up surveillance near the UPS store.

---

[1] Also commonly known as ecstasy, and molly or mandy, a potent empathogen–entactogen with stimulant and minor psychedelic properties primarily used for recreational purposes.

[2] Ketamine is a dissociative anesthetic that has some hallucinogenic effects.

PLEA AGREEMENT - 6

   At approximately 5:00 p.m., law enforcement personnel observed a young, Caucasian male, with blond hair and beard, wearing a black shirt, enter the store and retrieve an item from the vicinity of box #144. About one minute later, the Caucasian male exited the UPS store with a package similar in size and shape to the package containing the MDMA and ketamine, and entered a black sports utility vehicle. The black SUV subsequently left the area traveling north on 72 Avenue toward Summitview Avenue. As law enforcement followed the black SUV, it was confirmed that the subject package had been delivered to the Caucasian male.

   The black SUV continued east on Summitview Avenue followed by law enforcement. At Summitview Avenue and 36th Avenue, law enforcement engaged their emergency lights and blocked the black SUV with three law enforcement vehicles. The black SUV stopped for a moment, but then drove away south on 36th Avenue through a residential neighborhood. After evading law enforcement for approximately two minutes, law enforcement observed an object thrown from the black SUV. An HSI special agent stopped to retrieve the discarded object and identified it as the subject package from the UPS store, and that it had been opened. A clip on the Lego box and been unlatched, indicating that it too had been opened.

   Law enforcement subsequently lost sight of the black SUV. At approximately 9:30 p.m. that evening, Yakima PD located the black SUV near Avanta Dental at 2906 West Nob Hill Boulevard in Yakima, Washington. YPD ran the black SUV's registration and retrieved the photograph of the registered owner of the black SUV. HSI special agents confirmed that the registered owner was the same individual who picked up the subject package from the UPS store earlier that evening. Department of Motor Vehicle registration identified the owner of the black SUV as Defendant.

//

PLEA AGREEMENT - 7

Law enforcement personnel subsequently reviewed video footage from the UPS store showing Defendant enter the UPS store on March 16, 2021, open a mailbox, and retrieve a slip of paper, which Defendant then handed to a UPS store employee. The UPS employee can be seen handing Defendant the subject package. Defendant then leaves the store.

Law enforcement personnel also retrieved video footage from Avanta Dental, which shows Defendant park his black SUV in the Avanta Dental parking lot. Defendant then exited the black SUV and climbed over a nearby fence, abandoning the black SUV.

On March 18, 2021, the MDMA and ketamine were shipped to the CBP drug-testing laboratory. The CBP laboratory tested the suspected MDMA and ketamine and determined that the MDMA was 997 grams of a mixture or substance containing a detectable amount of MDMA, and the weight of the ketamine was 90 grams.

Defendant stipulates and agrees that he knowingly possessed the MDMA and had the intent to deliver the MDMA to another person.

9. <u>The United States' Agreements</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

10. <u>United States Sentencing Guidelines Calculations</u>:

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

PLEA AGREEMENT - 8

      a. *Base Offense Level:*

The United States and Defendant agree to recommend a Base Offense Level of 26, based on Defendant's relevant conduct and a converted drug weight of 498 kilograms of MDMA and ketamine. U.S.S.G. § 2D1.1(c)(7).

      b. *Specific Offense Characteristics*:

The United States acknowledges that Defendant may qualify for a two (2)-level reduction for "safety valve." *See* U.S.S.G. §2D1.1(b)(18); *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021).

      c. *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three (3)-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

        i. Accepts this Plea Agreement;

        ii. Enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

        iii. Demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

        iv. Provides complete and accurate information during the sentencing process; and

        v. Does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

//

PLEA AGREEMENT - 9

d.   *No Other Agreements:*

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

e.   *Criminal History*:

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigation Report.

11.   Incarceration:

The United States agrees to recommend a term of incarceration no higher than 46 months.

Defendant may recommend any legal sentence.

12.   Supervised Release:

The United States and Defendant each agree to recommend three (3) years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's supervised release is final and non-appealable; that is, even if Defendant is dissatisfied with the conditions of supervised release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of supervised release.

//
//
//

PLEA AGREEMENT - 10

The United States and Defendant agree to recommend that, in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

    b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

13. <u>Criminal Fine</u>:

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is dissatisfied with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. <u>Payments While Incarcerated</u>:

Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea

PLEA AGREEMENT - 11

Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives his right to appeal his conviction and/or sentence if the Court sentences Defendant to no more than 46 months of incarceration. If the Court sentences Defendant to more than 46 months of incarceration, Defendant may only appeal the reasonableness of his sentence.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

//

//

PLEA AGREEMENT - 12

      a.    This Plea Agreement shall become null and void;

      b.    The United States may prosecute Defendant on all available charges;

      c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

      d.    The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

//

//

PLEA AGREEMENT - 13

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____     14 November 2023
TODD M. SWENSEN                Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____     11-14-23
PAUL LAWRENCE SYLVESTER        Date
Defendant

PLEA AGREEMENT - 14

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____    \_\_\_11/14/23_____
Robert Flennaugh                                                Date
Attorney for Defendant

PLEA AGREEMENT - 15